UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

NICHOLE SUSANNE BAIN,

     Plaintiff,

v.

JINNAH INTERNAL MEDICINE, LLC, an
Oregon Limited Liability Company; and
SHEHZAD JINNAH, an individual,

     Defendants.

Case No. 6:24-cv-01714-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Plaintiff Nichole Bain brings this employment action against her former employer,
Defendant Shehzad Jinnah ("Dr. Jinnah") and his business, Dr. Jinnah Internal Medicine, LLC
("JIM LLC") (collectively "Defendants"). Amended Complaint, ECF No. 14. ("Am. Compl.").
Defendants move to dismiss five of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) and strike
various allegations under Fed. R. Civ. P. 12(f). Defs.' Mot. to Dismiss for Failure to State a
Claim, Motion to Strike, ECF No. 16. ("Defs.' Mot."). In the alternative, Defendants move for an
order requiring Plaintiff to make the claims and allegations in the Amended Complaint more
definite and certain. For the reasons below, Defendants' motions are DENIED.

## BACKGROUND

The following allegations are accepted as true for purposes of this Opinion. Plaintiff
worked for Dr. Jinnah for almost three years. Am. Compl. ¶ 1. Dr. Jinnah is the owner and

principal physician of JIM LLC, a medical office in Eugene Oregon. Dr. Jinnah hired Plaintiff as a medical assistant. *Id.* at ¶ 10. Plaintiff and Dr. Jinnah were the only full-time employees of JIM LLC. *Id.* ¶ 13. Dr. Jinnah would also hire part-time student interns. *Id.* Plaintiff alleges that at the beginning of her employment, Dr. Jinnah was very generous to Plaintiff and would give Plaintiff and her children gifts and take them out to eat. *Id.* ¶ 14. After a few months, Dr. Jinnah started making inappropriate comments toward Plaintiff, unrelated to her children. *Id.* ¶ 15. "For example, Dr. Jinnah told Ms. Bain that he gets along better with 'smiley', 'cute', 'sweet', and 'friendly' females and that the reason he got along with Ms. Bain was because she does 'not talk back to him.'" *Id.*

Plaintiff alleges that Dr. Jinnah subjected her to harassment and discrimination because of her race and sex, creating a hostile work environment. *Id.* ¶ 1. Dr. Jinnah made multiple comments to Plaintiff regarding her race, including:

    a. commenting in or around August 2022 that Ms. Bain should not spend time in the sun, so her skin did not get darker because he preferred lighter complexions;
    b. commenting that Ms. Bain should look into surgery and skin-lightening products to lighten her skin color;
    c. asking about Ms. Bain's nationality and then stating with surprise that he did not know that she was Black when he hired her;
    d. asking why Ms. Bain's hair was so big and curly and stating that he did not like it that way while commenting that another woman had beautiful blonde hair; and
    e. saying in an unhappy tone that he never knew what kind of hairstyle Ms. Bain would show up in.

*Id.* ¶ 18.

Plaintiff also alleges Dr. Jinnah would ask Plaintiff to dress in certain ways, bought her clothes and asked her to wear them around the workplace, commented on and made fun of her weight and appearance, said men are "gods" and that women needed to listen to them, asked Plaintiff about her dating life, and suggested Plaintiff buy a sex toy instead of using dating websites. *Id.* ¶¶ 1, 16. Dr. Jinnah would also allegedly refer to women using explicit and

derogatory language in front of Plaintiff. *Id.* ¶ 16. Whenever Dr. Jinnah acted in a way that made Plaintiff uncomfortable, she would walk away if possible or would express her discomfort by saying "that's disgusting," "wow," "Dr. Jinnah, really?!" or "I don't like how you talk to me." *Id.* at ¶ 22. Defendants did not have a human resources department, so if Plaintiff wanted to report any complaints or issues, she was obligated to report them directly to Dr. Jinnah. *Id.* ¶¶ 13, 31.

Plaintiff alleges that Dr. Jinnah "also made highly sexualized comments that were unwanted and made Ms. Bain feel extremely uncomfortable." *Id.* ¶ 17. For example, on or around February 27, 2023, Dr. Jinnah allegedly made comments implicating that he masturbated in the office bathroom. *Id.* Plaintiff alleges that Dr. Jinnah frequently made inappropriate comments about the appearance of women's genitals, unrelated to the purpose of their medical examination. *Id.* ¶ 19.

 Dr. Jinnah told Plaintiff that her paid time off ("PTO") would depend on how well Plaintiff worked with Dr. Jinnah and how accessible she was in her off hours. *Id.* ¶ 26. Dr. Jinnah would also change office policies depending on his mood and would try to make Plaintiff work on weekends or while she was sick. *Id.* ¶ 25. Plaintiff never received overtime pay for work performed outside of her weekly forty hours. *Id.* ¶¶ 11, 12, 25.

On or around November 16, 2023, Plaintiff had to take a medical leave of absence due to Dr. Jinnah's conduct harming her mental health. *Id.* ¶¶ 1, 36–37. On or around November 19, 2023, Dr. Jinnah terminated Plaintiff via email while she was still on medical leave. *Id.* ¶¶ 37–38. In the email, Dr. Jinnah stated he was terminating Plaintiff effective December 20, 2023 because of her frequent occurrences of unannounced time off and her being distracted at work. *Id.* ¶ 38.

On October 9, 2024, Plaintiff filed her Complaint with the Court. Plaintiff brings eleven claims against Defendants for unlawful employment practices. Defendants move to dismiss five of Plaintiff's claims: Claim Two (Discrimination Based on Race), Claim Three (Retaliation), Claim Five (Common Law Wrongful Discharge), Claim Seven (Aiding or Abetting), and Claim Eleven (Unpaid Wages). Defendants also move to strike certain language and allegations from Plaintiff's Amended Complaint and move in the alternative for a more definite statement.

## STANDARDS

### I.    Motion to Dismiss — Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers, Inc.*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## II.    Motion to Strike — Fed. R. Civ. P. 12(f)

Rule 12(f) allows courts to strike from a pleading any matters that are "immaterial," "impertinent," or "scandalous." Fed. R. Civ. P. 12(f). An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (quoting C. Wright, A. Miller, et al., 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2013)). "Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question." *Id.* A matter is scandalous if it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." 2 MOORE'S FEDERAL PRACTICE § 12.37[3] (Bender 3d ed.). Such pleadings are legally insufficient because they lack merit "under any set of facts the defendant might allege." *Polk v. Legal Recovery L. Offs.*, 291 F.R.D. 485, 489 (S.D. Cal. 2013) (citation and quotation marks omitted). "Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008).

## III.    Motion to Make More Definite and Certain — Fed. R. Civ. P. 12(e)

Under Rule 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion "must point out the defects complained of and the details desired." *Id.* A motion for a more definite statement is generally

disfavored. *Martin v. City of Portland*, No. 3:19-CV-1647-SI, 2020 WL 363391, at *2 (D. Or. Jan. 21, 2020). "Rule 12(e) is designed to strike at unintelligibility, rather than want of detail." *Monical v. Jackson Cnty.*, No. 1:17-CV-00476-YY, 2021 WL 1110197, at *11 (D. Or. Mar. 23, 2021). "When the detail sought is available through discovery, the motion should be denied." *Francisco v. Valencia*, No. 1:24-CV-00332-CL, 2024 WL 3756017, at *2 (D. Or. Aug. 12, 2024) (citation omitted). Accordingly, a motion for a more definite statement should not be granted unless a defendant "literally cannot frame a responsive pleading." *Brooks v. Caswell*, No. 3:14-CV-01232-AC, 2016 WL 866303, at *2 (D. Or. Mar. 2, 2016) (internal quotations and citation omitted).

## DISCUSSION

### I.    Claim Two: Discrimination Based on Race — ORS 659A.030(1)(a)–(b)

Defendants move to dismiss Plaintiff's claim for discrimination based on race.

### A.    Count One: Hostile Work Environment

To establish a *prima facie* claim for hostile work environment, a plaintiff must allege, "(1) she was 'subjected to verbal or physical conduct' because of her race, (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.'" *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)).[1] A workplace is hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (internal quotation marks and citation omitted). *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether a workplace "is 'hostile' or

---

[1] *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) holds that Oregon employment discrimination law was created to be identical to Title VII. As such, a discrimination or hostile workplace analysis under Oregon law may follow a Title VII analysis.

'abusive' can be determined only by looking at all the circumstances." *Id.* at 23. These

circumstances, for example:

> may include the frequency of the discriminatory conduct; its severity; whether it
> is physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work performance. The
> effect on the employee's psychological well-being is, of course, relevant to
> determining whether the plaintiff actually found the environment abusive.

*Id.* This list is not exhaustive, and no single factor is required. *Id.*

Defendants argue that Dr. Jinnah's alleged comments related to Plaintiff's race were

merely offhand and isolated incidents insufficient to state a claim for hostile work environment.

The Court disagrees.

Employment discrimination claims may be based on a combination of discriminatory

motives. *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1562 (9th Cir. 1994), *as amended* (Nov. 21,

1994), *as amended* (Dec. 14, 1994) (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416

(10th Cir. 1987) ("in determining the pervasiveness of the harassment against a plaintiff, a trial

court may aggregate evidence of racial hostility with evidence of sexual hostility")). As the

Ninth Circuit explained over thirty years ago:

> where two bases for discrimination exist, they cannot be neatly reduced to distinct
> components. Rather than aiding the decisional process, the attempt to bisect a
> person's identity at the intersection of race and gender often distorts or ignores the
> particular nature of their experiences. . . . [W]hen a plaintiff is claiming race and sex
> bias, it is necessary to determine whether the employer discriminates on the basis
> of that combination of factors, not just whether it discriminates against people of
> the same race or of the same sex.

*Lam*, 40 F.3d at 1562 (internal citations and footnotes omitted).

Here, Defendant's alleged comments about Plaintiff's appearance and behavior as a black

woman "cannot be neatly reduced to distinct" offhand comments about her race. *Id.* Plaintiff

alleges that Dr. Jinnah commented on Plaintiff's naturally dark and curly hair, the shape of her

figure, and the color of her skin. These alleged comments occurred in the context of Dr. Jinnah's other hypersexualized and inappropriate comments about the physical appearance of Plaintiff and other women. Plaintiff alleges that Dr. Jinnah's comments were unwelcome, and that Dr. Jinnah's conduct altered the conditions of Plaintiff's employment to such an extent that she had to take medical leave from work for mental health purposes. Defendants' "attempt to bisect [Plaintiff's] identity at the intersection of race and gender . . . distorts or ignores the particular nature of [Plaintiff's alleged] experiences." *Id.* Plaintiff plausibly alleges that Dr. Jinnah created a hostile work environment by discriminating against Plaintiff based on her status as a black woman.

###    B.    Count Two: Intentional Discrimination

A *prima facie* case of intentional discrimination "may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994). Under the *McDonnell Douglas* framework, the plaintiff may be entitled to a presumption of intentional discrimination upon a showing that other similarly situated individuals outside the plaintiff's protected class were treated more favorably. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). "When a plaintiff does not rely exclusively on the [*McDonnell Douglas*] presumption but seeks to establish a *prima facie* case through the submission of actual evidence, very little such evidence is necessary." *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986). Intentional discrimination may be shown by direct or circumstantial evidence. *Id.* In fact, "any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder." *Id.*

Defendants argue that Dr. Jinnah's alleged comments were "simply too few and too innocuous to support a claim for intentional race discrimination." Defs.' Mot. 5.[2] This argument is unsupported by a citation to a legal authority and contrary to Ninth Circuit law, which requires "very little evidence." *Lam*, 40 F.3d at 1564. The allegations in support of Plaintiff's hostile work environment claim, if proved, provide direct and circumstantial evidence of Dr. Jinnah's intentional discrimination. *Id.* at 1562 (evidence of sex and race discrimination can be used in combination to show intentional discrimination). Plaintiff plausibly alleges that Dr. Jinnah intentionally discriminated against her based on her status as a black woman.

## II.    Claim Three: Retaliation — ORS 659A.030(1)(f)

Plaintiff alleges that Defendants terminated her in retaliation for her opposition to Dr. Jinnah's hostile and discriminatory conduct.

Under ORS 659A.030(1)(f), it is an unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

A plaintiff states a claim for retaliation under ORS 659A.030(1)(f) by alleging that her employer subjected her to adverse treatment because she "explicitly or implicitly" opposed an unlawful practice. Or. Admin. R. ("OAR") 839–005–0125.[3] The word "opposition" in the

---

[2] Defendants also argue that Plaintiff cannot prove intentional discrimination because she is JIM LLC's only employee. By Defendants' measure, an employee can only prove intentional discrimination if similarly situated coworkers outside of their protected class are treated more favorably. Defendants' argument would produce absurd results, allowing an employer to lawfully discriminate if he only has one employee or if all of his employees are in the same protected class. However, whether similarly situated individuals outside of the plaintiff's protected class were treated more favorably is but one of several ways of showing intentional discrimination. *Wallis*, 26 F.3d at 889.

[3] OAR 839–005–0125, adopted by the Oregon Bureau of Labor and Industries, "reflect[s] the *prima facie* requirements" for a retaliation claim under ORS 659A.030(1)(f). *Portland State Univ.*

employment retaliation context "carries its ordinary meaning," is interpreted broadly, and

includes expressing an adverse opinion in response to the employer's unlawful practice.

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)

(citing dictionary definitions to interpret meaning of "oppose" under Title VII).[4] An "unlawful

practice" includes race-based and sex-based discrimination in the workplace. *Cuddigan-Placito*

*v. State Accident Ins. Fund*, 335 Or. App. 663, 675 (2024); ORS 659A.030(1)(b).

Defendants argue that Plaintiff has not plausibly alleged that she *opposed* Dr. Jinnah's

misconduct or that she was *treated adversely* in response to her opposition. The Court disagrees.

Plaintiff alleges that:

> Dr. Jinnah's sexual and racial comments were unwelcome and made Ms. Bain
> feel extremely uncomfortable, which she expressed via her facial expressions,
> walking away (if possible), or verbally stating her discomfort. For example, Ms.
> Bain would state her opposition with phrases like "That's disgusting," "Wow," "I
> don't like how you talk to me," or "Dr. Jinnah, really?!?" Often, Dr. Jinnah would
> respond by laughing in a mocking manner and saying he was "just joking" but
> would then would [sic] often increase his hostility towards her.

Am. Compl. ¶ 22. By expressing an adverse opinion and walking away, Plaintiff implicitly and

explicitly opposed Dr. Jinnah's allegedly hostile and discriminatory conduct. Plaintiff alleges

that in response to her opposition, Dr. Jinnah increased his hostility towards her and that she was

ultimately terminated because she resisted Dr. Jinnah's unlawful practices by taking a leave of

absence from the allegedly hostile environment. Plaintiff plausibly states a claim for retaliation

under ORS 659A.030(1)(f).

---

Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ., 352 Or. 697, 722 n.17 (2012);
*Ekeya v. Shriners Hosp. for Child., Portland*, 258 F. Supp. 3d 1192, 1202 n.7 (D. Or. 2017).
[4] The Court looks to how the Supreme Court's definition of "oppose" to interpret its meaning under
Oregon law because "federal precedent interpreting the antidiscrimination provisions of Title VII
can provide useful additional context to aid our analysis of the meaning of ORS 659A.030(1)(f)."
*Portland State Univ. Chapter of Am. Ass'n of Univ. Professors*, 352 Or. at  711 (2012).

III.    **Claim Five: Wrongful Discharge**

Plaintiff's fifth claim alleges that Defendants committed the common law tort of wrongful discharge by terminating Plaintiff's employment because she invoked her right to sick leave. Am. Compl. ¶ 79. Defendants argue that this claim is duplicative of and precluded by adequate statutory remedies provided under ORS 659A.030(1)(a)–(b) (race based and sex based discrimination), ORS 659A.030(1)(f) (retaliation), and ORS 659A.112 (disability based discrimination). The Court disagrees.

In Oregon, wrongful discharge tort claims were established to "serve as a narrow exception to the at-will employment doctrine . . . where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." *Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp. 1122, 1127 (D. Or. 1998); *Nees v. Hocks*, 272 Or. 210, 218 (1975). Wrongful discharge cases are organized into three distinct categories:

Under the first category, employees "discharged for fulfilling a societal obligation" may pursue a wrongful discharge claim. *Delaney v. Taco Time Int'l, Inc.*, 297 Or. 10, 15 (1984). Examples of the first category include terminating an employee for attending jury duty and terminating an employee "for refusing to follow his employer's instructions to testify falsely under oath." *Id.*

Under the second category, employees "discharged for exercising an employment related right of important public interest" may also pursue a wrongful discharge claim. *Carlson v. Crater Lake Lumber Co.*, 103 Or. App. 190, 193 (1990). For example, the plaintiff in *Yeager v. Providence Health Sys. Oregon*, 195 Or. App. 134 (2004) adequately stated a claim for wrongful discharge where she alleged that "'Defendant's termination of plaintiff constituted an intentional breach of the public policies favoring an employee's right to seek time off work in order to

obtain medical care for a serious medical condition.'" *Id.* at 143 (quoting the plaintiff's complaint).

Under the third category, however, employees discharged for reasons contrary to public policy are nonetheless precluded from pursuing a wrongful discharge claim "where an adequate existing remedy [already] protects the interests of society." *Delaney*, 297 Or. at 16. For example, although terminating an employee for complaining about workplace safety frustrates an employment related right of important public interest, the plaintiff in *Walsh v. Consol. Freightways, Inc.*, 278 Or. 347 (1977) was precluded from bringing a wrongful discharge claim because a complaint to the Department of Labor provided an adequate statutory remedy. An adequate statutory remedy exists when the statute adopts "virtually all remedies that would have been available under common law." *Farrimond v. Louisiana-Pac. Corp.*, 103 Or. App. 563, 567 (1990).

Here, Plaintiff's allegation that she was terminated for taking protected sick leave falls into the second category of a wrongful discharge claim, exercising an employment related right of important public interest. Plaintiff alleges that Oregon has an important public policy that prohibits "an employer from retaliating and discriminating against Plaintiff for inquiring about or invoking sick leave protections." Am. Compl. ¶ 77. And she alleges that "Defendants terminated Plaintiff's employment on the basis of Plaintiff's invocation and inquiry of sick time." Am. Compl. ¶ 79. Oregon courts recognize the right to take medical leave as an employment related right of important public interest. *Yeager*, 195 Or. App. at 143 (reversing trial court's granting of a motion to dismiss wrongful discharge claim alleging violation of the plaintiff's right to take medical leave).

Defendants' argument that Plaintiff's wrongful discharge claim is duplicative of and therefore precluded by her statutory claims for discrimination and retaliation is unpersuasive. The factual allegations in support of the wrongful discharge claim are distinct from the factual allegations in support of plaintiff's discrimination and retaliation claims. For example, Plaintiff's retaliation claim under ORS 659A.030(1)(f) relies on her allegation that she opposed Dr. Jinnah's hostile and discriminatory conduct related to Plaintiff's race and sex. In contrast, Plaintiff's wrongful discharge claim relies on her allegation that she was terminated for invoking her right to take sick leave.

Plaintiff's wrongful discharge claim implicates the rights invoked under the Oregon Sick Leave Act ("OSLA"), ORS 653.641, which prohibits an employer from retaliating against an employee for taking sick leave. An adequate statutory remedy does not already exist because unlike Plaintiff's discrimination and retaliation claims under ORS 659A.030 and ORS 659A.112, the OSLA does not permit compensatory or punitive damages. ORS 659A.885(3); *Stillwell v. Old Dominion Freight Line, Inc.*, No. 3:19-CV-1789-SI, 2021 WL 3056375, at *12 (D. Or. July 20, 2021). Because the OSLA does not adopt all of the remedies available under the common law, Plaintiff's wrongful discharge is not precluded by other statutory remedies. *See Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 97 (1984).

## IV.    Claim Seven: Aiding or Abetting — ORS 659A.030(1)(g)

Plaintiff alleges that Dr. Jinnah violated ORS 659A.030(1)(g) by aiding, abetting, inciting, compelling, or coercing JIM LLC's unlawful conduct. Am. Compl. ¶ 90.

Under ORS 659A.030(1)(g), it is unlawful for "any person, whether an employer or employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." The definition of a "person" for purposes of ORS 659A.030(1)(g) includes: "One or more individuals, partnerships, associations, labor organizations, limited

liability companies, joint stock companies, corporations, legal representatives, trustees, trustees in bankruptcy or receivers." ORS 659A.001(9)(a). To "aid or abet" means to "assist[] another to commit an act." *Allison v. Dolich*, 321 Or. App. 721, 726 (2022).

Defendants argue that because Dr. Jinnah is the sole owner and operator of JIM LLC, he cannot aid or abet himself. This argument relies on district court opinions that run contrary to more recent and persuasive caselaw.[5] In *Allison v. Dolich*, 321 Or. App. 721 (2022), the Court of Appeals explained that:

> the term "any person" as used in ORS 659A.030(1)(g) is broad enough to cover those persons who act on behalf of the employer—indeed, the statute expressly references "an employer or an employee." We think that the legislature's intention was that the persons directing the business-entity employer's unlawful conduct can be held individually liable under ORS 659A.030(1)(g).

321 Or. App. at 724. Relying on district court opinions which mirror Defendants' argument here, the trial court had reasoned "that a person with executive authority who acts on behalf of a business-entity employer through decision-making resulting in liability under ORS chapter 659A cannot be said to have aided or abetted the person's own decision-making in directing the business." *Id.* The Court of Appeals expressly rejected this reasoning because it was "inconsistent" with its broad construction of ORS 659A.030(1)(g). *Id.* at 726; *Hernandez v. Cath. Health Initiatives*, 311 Or. App. 70, 80 (2021) (ORS 659A.030(1)(g) "applies broadly to anyone falling within the definition of a person."). The Court of Appeals in *Allison* concluded that:

> whether the individual defendants were acting in their personal capacities or on behalf of the LLCs, they were "persons" who assisted the LLCs by making the

---

[5] "Absent controlling precedent from the state supreme court, a federal court must 'predict how the highest state court would decide the state law issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1131–32 (9th Cir. 2021) (brackets omitted) (quoting *Judd v. Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020)).

> decisions that enabled the violations. The trial court therefore erred in determining
> that the individual defendants could not be found liable for aiding or abetting the
> LLCs under ORS 659A.030(1)(g) and in granting summary judgment to the
> individual defendants on plaintiffs' twelfth claim.

321 Or. App. at 726.

Defendants argue that *Allison* is distinguishable because unlike in *Allison*, here, the LLC is solely owned and operated. However, the issue in *Allison* was whether an individual member could aid or abet an LLC, not whether the members could collectively aid or abet the LLC. Moreover, although *Allison* involved multiple LLCs with multiple members, the Court of Appeals framed the dispute as "the narrow legal question [of] whether, in a claim for violations under ORS chapter 659A against an LLC employer, the LLC's *member and owner* or *chief executive* may be liable for aiding or abetting the LLC's violations." *Id.* at 724. The question was framed as whether an individual member can be held personally liable for aiding or abetting his own LLC? The answer was yes. *Id.* at 726.

Any person, including a member directing the LLC, can be held individually liable for aiding or abetting the LLC's unlawful conduct. *Id.* at 726. Dr. Jinnah and JIM LLC are each a "person" under ORS 659A.001(9)(a). Plaintiff alleges that Dr. Jinnah directed JIM LLC's unlawful conduct which violated ORS chapter 659A. Am. Compl. ¶ 90. Plaintiff plausibly states a claim under ORS 659A.030(1)(g).

## V.    Claim Eleven: Unpaid Wages Upon Termination — ORS 652.140

Plaintiff alleges that JIM LLC violated ORS 652.140 (final paycheck claim) by failing to pay all wages due upon termination. Am. Compl. ¶¶ 118–119.

Under ORS 652.140, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the

discharge or termination." "Wages withheld from earlier pay periods are no less 'earned and

unpaid' at the time of discharge under ORS 652.140 than wages that accrued during the

employee's final pay period before discharge." *Salinas v. One Stop Detail*, 194 Or. App. 457,

461 (2004).

Defendants argue that Plaintiff's final paycheck claim should be dismissed because it is

duplicative of her other wage claims. Defendants assert that the final paycheck claim under ORS

652.140 is based on the same underlying conduct as her unlawful withholdings claim under ORS

652.610 and her failure to pay overtime claim under ORS 653.261. Under Rule 8(d), a plaintiff

may set out multiple alternative claims, regardless of consistency. Fed. R. Civ. P. 8(d)(2)–(3).

Determination of whether Plaintiff's final paycheck claim under ORS 652.140 is duplicative of

her other unpaid wages claims is premature at the motion to dismiss stage.

Defendants' additional argument that Plaintiff fails to allege the basis of her final

paycheck claim is directly refuted by the Amended Complaint. Plaintiff alleges that throughout

her employment, JIM LLC "failed to pay Plaintiff overtime and unlawfully withheld wages for

many, if not all, relevant pay periods." Am. Compl. ¶ 118. Plaintiff alleges that JIM LLC

violated ORS 652.140 by failing to pay these back wages and unlawful withholdings upon

discharge. Plaintiff plausibly states a claim under ORS 652.140.

## VI.    Motion to Strike — Fed. R. Civ. P. 12(f)

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Defendants ask the Court to strike (1) Plaintiff's use of the word "grooming" and (2)

Plaintiff's allegation regarding Dr. Jinnah's "highly unusual and strange [workplace bathroom]

habit." Am. Compl. ¶¶ 15, 17.

A.      Use of the Word "Grooming"

Plaintiff alleges that at the beginning of her employment, Dr. Jinnah was extremely

generous and nice, giving Plaintiff bonuses and gift cards as well as inviting her and her children

to the clinic on weekends so that Dr. Jinnah could buy them all lunch or dinner. Am. Compl. ¶

14. Plaintiff then alleges that "[a]fter a few months of this grooming behavior, Dr. Jinnah began

to make inappropriate comments about Ms. Bain's body, other women, and his female patients."

Am. Compl. ¶ 15.

Defendants argue that Plaintiff's use of the word "grooming" should be stricken because

"it is [a] highly inflammatory characterization of otherwise innocuous conduct that does not add

any material factual allegations." Defs.' Mot. 14. Plaintiff responds that the word "grooming" is

an important and unique term of art used to describe "a particular set of behaviors in which a

perpetrator employs psychological techniques that have the effect of gaining a victim's trust in a

way that allows the perpetrator to more easily transgress boundaries inappropriately." Pl.'s Resp.

24. Plaintiff's response, most importantly, is supported by the allegations in the Amended

Complaint. After labelling Dr. Jinnah's alleged behavior as grooming, Plaintiff then alleges that

he "engaged in repeated cycles of emotional manipulation[.]" Am. Compl. ¶ 16. Defendants'

conclusory characterization of this conduct as "innocuous" is a factual challenge to Plaintiff's

allegations, inappropriate at the motion to dismiss stage. The use of the word grooming in this

context is therefore not meaningless; it advances her material allegations that Dr. Jinnah acted in

a manipulative manner which contributed towards his allegedly hostile and discriminatory

conduct.

Defendants also argue that the word "grooming" should be stricken because "it is

confusing and ambiguous in that the reader could interpret it to mean that Plaintiff is alleging

that Dr. Jinnah was targeting both Plaintiff and her children for nonconsensual sexual activity."

Defs.' Mot. 14. Rule 12(f) is not the appropriate mechanism for objecting to a confusing or ambiguous allegation. *See* Fed. R. Civ. P. 12(e). Regardless, Plaintiff's use of the term is not confusing or ambiguous when evaluated in context.

Plaintiff alleges that Dr. Jinnah acted generously towards Plaintiff and her children so that Plaintiff would feel financially and emotionally indebted and would therefore be more likely to tolerate Dr. Jinnah's inappropriate conduct. Plaintiff alleges many specific examples of Dr. Jinnah's inappropriate conduct, none of which implicate Plaintiff's children. Nor does Plaintiff assert any claims on behalf of her children. Defendants' motion to strike the term "grooming" is denied.

### B.    Example of Dr. Jinnah's Bathroom Use

Defendants move to strike Plaintiff's allegation that "Dr. Jinnah also had a highly unusual and strange habit of taking his laptop into the only available single-stall restroom — wherein he always kept a jar of Vaseline — and spending inordinate amounts of time occupying it." Am. Compl. ¶ 17.

Defendants argue that this allegation should be stricken because it is irrelevant and impertinent, asserting that what Dr. Jinnah "does in the privacy of a restroom stall is simply no one's business but Dr. Jinnah's." Defs.' Mot. at 14. Again, Defendants ask the Court to evaluate the significance of this allegation removed from the context in which it appears. The paragraph in which this allegation appears reads in full:

> Dr. Jinnah also made highly sexualized comments that were unwanted and made Ms. Bain feel extremely uncomfortable. For example, on or around February 27, 2023, Dr. Jinnah stated, in a manner that was clearly intended to be sexual in nature: "oh don't you hate it when the light turns off in [the bathroom] it's like I really have to just grab it and hold onto it, and hopefully I don't spray all over the place." Dr. Jinnah also had a highly unusual and strange habit of taking his laptop into the only available single-stall restroom – wherein he always kept a jar of Vaseline – and spending inordinate amounts of time occupying it.

Page 18 — OPINION AND ORDER

Am. Compl. ¶ 17 (brackets original). These allegations are made in support of Plaintiff's hostile work environment claim. When determining whether a workplace is hostile, a court must consider the totality of the circumstances. *Harris*, 510 U.S. at 23. If proved, the allegations in Paragraph 17 support Plaintiff's claim that she was subjected to an unlawfully hostile work environment. What an employer does in their business' bathroom is not, strictly speaking, their personal business. Defendants' motion to strike this allegation is denied.

### VII.    Motion to Make More Definite and Certain — Fed. R. Civ. P. 12(e)

Defendants move in the alternative for the Court to order Plaintiff to make her allegations more definite and certain.

Under Rule 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Defendants fail to show that any of Plaintiff's claims are so unintelligible or lacking in factual allegations that Defendants cannot begin to frame a responsive pleading. Instead, they simply repackage their Rule 12(b)(6) arguments under the guise of Rule 12(e). The information that Defendants seek can be obtained through the discovery process. Defendants' motion to make more definite and certain is denied.

## CONCLUSION

For the reasons above, Defendants' Motions to Dismiss, Strike, and Make More Definite and Certain (ECF No. 16) are DENIED.

DATED this <u>30th</u> day of April 2025.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge

Page 19 — OPINION AND ORDER